Good morning and may it please the court my name is Thomas Seaball and I represent the appellant Jesus Flores. My plan is to reserve two out of my 15 minutes for rebuttal. Are you kidding me? You said you want to, I thought you said your client did this. No, my plan. No, no, got it, understood. Okay, very well. Child abuse that results in significant injury to a child is a very serious crime and a crime for which serious penalties are imposed. Fabricating evidence in support of the arrest of an innocent person for such a crime is itself a very serious wrong as well. Indeed, one might say the more serious the alleged crime and the corresponding penalty, the more wrong it is for an officer to fail to accurately report the facts and the statements of witnesses. Jesus Flores called 911 when his two-month-old son began coughing and gasping for air and he performed CPR to save his son's life. This innocent father was then deprived of his liberty for two years, separated from his son and his family while he faced prosecution for child abuse based on the investigating police officers falsehoods and exaggerations which included blatant lies at preliminary hearing. Let me ask you this, this is a sad story all around, but in your view, what is the legal standard for fabrication? In other words, how can we tell the difference between a mistake and a lie in Gallen's testimony? Right, so there are three ways to establish a direct evidence that a witness statement was falsely reported or a fact was falsely reported. There are two circumstantial ways to establish that claim. One is by showing that the officer had deliberate indifference with respect to the plaintiff's innocence or a third way is that the officer's interrogation tactics were abusive or coercive. Those are all, it's still one claim, but those are three different ways to prove that same claim and I think the central issue in the case is the district court determined that the errors or that the officer's mistakes and errors were obviously the result of care or were the result of carelessness were trivial, inconsequential and not giving rise to a fabrication of evidence claim. I think you answered a different question than what I intended. I'm sorry, your honor. You told me three ways that you could reach the issue of fabrication, but my question was how can we tell the difference between a mistake and a lie? What's the standard here? What do you have to prove on your client's behalf in order to show that there was in fact fabrication using whichever of the three methods that you referred to? Well, I think that one helpful reference point is the Caldwell versus city and county of San Francisco case where the court indicated that where the officer's mistakes were not, quote, obviously the result of mere carelessness, unquote, then the question of whether the officer's conduct amounts to deliberate indifference or mere negligence or carelessness is an issue for the trier of fact, not appropriate for resolution on summary judgment. And our position, of course, is that this case too was for the trier of fact and was not appropriate for resolution on summary judgment. And the way that we prove that, I suppose, is by showing that mistakes that were not of a trivial or inconsequential character that were not the result of mere carelessness. I could begin with the question of the 10 minute interval that was indicated in his probable cause declaration in his preliminary hearing testimony and in his report that Dr. Hyden had told him that the injury had taken place within 10 minutes of the child's collapse. And when I asked Dr. Hyden if he had said that, he said no. I showed him the police report. Is the statement that's attributed to you in the police report accurate? Answer, no. So that is a mischaracterized. I think what the doctor said was almost immediately. Well, what he said was, so he specifically said, I did not give the statement 10 minutes. In a subsequent colloquy, he said, if I hadn't said 10 minutes, I would have said almost immediately. What does that mean? I'd like to refer to what that same doctor said at the criminal trial. This is on excerpts of record 1724. He was asked the same question. He said, I can't give minutes. It's occurs that there's a sudden change of neurological behavior, so it could be within minutes to an hour. Now, an hour is very different than 10 minutes. 10 minutes excludes all other possible suspects because within 10 minutes of the collapse, Jesus Flores is the only one there at the house. But if the interval is an hour, then it does not exclude all of the other possible suspects. The Jesus Flores is alone at the house from 3.40 p.m. on the day of the incident, and the fire department arrives at 4.20 p.m., an interval of 40 minutes. So if the injury could have happened within a time frame exceeding or up to an hour or longer, five or six hours, as Dr. Navin said, then the link between the plaintiff or the appellant and the alleged crime dissipates. And it was Galland himself who testified when I asked him at his deposition that the 10-minute interval that he allegedly received from Dr. Hyden was what he used to exclude all other possible suspects. Remember that when he conducted his interviews, he received information that family members actually suspected the maternal grandmother of being too rough with the child. So if the injury could have happened in a longer time frame, then the exclusively narrowing it down to Mr. Flores only, that inference dissipates. So that's the significance of the 10 minutes. That's why 10 minutes is important. And I do think under Costanich, this court has said that where a witness testifies that the statement is attributed to the witness in the officer's report is not accurate, then that is a prima fidelis. And in the Costanich versus Department of Social and Health Services, quote, an interviewer who deliberately mischaracterizes witness statements in her investigated report commits a constitutional violation. Well, but you have basically tied the two together. You say someone who intentionally does that. But the issue that I'm struggling with anyway is how do we know what's a mistake and what was intentional? And what you're saying is that the case that if the person intentionally does it, then of course that solves the problem. If we had evidence here that your client or someone else had intentionally done this, or I'm sorry, that the witness claiming the time period had intentionally misrepresented something, then that's different. What I'm struggling with is people are human. People make mistakes. And what I'm struggling with is how do we determine whether what was said was an error, a human error, or was it an intentional fabrication? How do we do that? Well, so that's I think what I'm trying to communicate is that where a plaintiff, this court in Spencer versus Peters and Devereux versus Abbey and Caldwell versus City and County of San Francisco, has said that where the plaintiff points to witness statements that were mischaracterized, where a witness says, I didn't say that, then that is evidence of the officer's state of mind in the sense that it's deliberate. If the plaintiff puts that forward, that is evidence from which a jury could infer that the mistake was deliberate. And I think in this case, it wasn't just the 10-minute figure. There were numerous instances throughout the development of the investigation where the officer has his fingers down on the scales. All of the errors or mistakes that the officer made with respect to the medical testimony tended to make the medical testimony more certain than it was and to make the time frame shorter than it was. So these errors and mistakes were always on one side of the scales and not on the other. And it's clear why the officer needed the time frame to be short as possible because that narrowed the list of suspects to one and the officer needed the medical evidence to be certain because that was the only thing tying the plaintiff to any kind of a crime. So an inference from those errors and omissions and mistakes is that they were intentional, that the officer, for whatever misguided reason, wanted this prosecution to stick. And there's also, of course, the issue of the video. We don't just have witness statements that contradict one another. We have the officer testifying in a preliminary hearing that the plaintiff, Mr. Flores, shook the doll violently so that the head was snapping back and forth while it was unsupported. And Mr. Flores has discovered and submitted into evidence a video showing that that did not happen. The officer testified specifically. This is a sequence of events, again, that did not happen. He says, this is at the preliminary hearing, Flores was holding the child, as I recall, facing him. He stated that he started rocking him. It wasn't working. He got frustrated and started shaking. While he was doing that, the stuffed animal that he was holding, the head was snapping violently back and forth. He also testified that the child's head was unsupported throughout the shaking. This simply is not true. It's not even close. And again, unlike other cases that we have cited, it's not a matter of conflicting testimony. We have a video that shows that what the officer said was not true. And when he was confronted with the video at the criminal trial, the officer admitted that his testimony at the preliminary hearing was untrue. And so that, under Caldwell and Spencer v. Peters, is evidence that from that the officer's errors, omissions, mistakes were deliberate. I want to just clarify something. The 10 minutes and the almost immediately relates to the time between the injury and the pulmonary distress. Then there's another period that relates to when the doctors are examining. And that's the hours issue. But the brief issue, the 10 minutes, relates to just the time period between the injury and the necessity for CPR. Right? Is that how the testimony lines up? I don't think the testimony lines up on that. I think different people said different things at different times, which is the reason for the confusion on that score. And I don't think that when I asked Gallant those questions that he had an answer on that. I think that's one of the issues, is that for a crime this serious and with a time frame so important, it's frustrating that there was not more clarity and precision with respect to those differences. Well, I guess clarity and precision is great, but that's not the standard. Right. Well, so yeah, the standard is that where there are deliberate mischaracterizations of witness statements, as shown by witnesses submitting declarations or giving testimony that that's not what they said, then the case should proceed to trial and a jury should determine whether or not that was deliberate. And without... You want to save the balance of your time? You don't have to, but you've passed my message. Very well. So Mr. Martirosian, representing the Bakersfield, please. Good morning, your honors. If it pleases the court, my name is Mick Martirosian. I'm counsel for the defendants and the appellees in this case. In our system of advocacy and our judicial system, where each side is represented by counsel, where there is a presentation of evidence, witnesses by each side, disputed testimony, differences of opinion, differences in interpretation of evidence, differences in what witnesses observed, whether the light was red or green at the time of the accident, is all part of the system. But and contrary evidence doesn't rise to the level of deliberate false or fabricated evidence in this case. And that's where the district court judge was correct in her ruling on this case. It was not fabricated that both doctors concluded that this two-month-old child, only two months old, was the subject of non-accidental abuse over a period of time during the child's life, both current and prior. And it is not fabricated that the child demonstrated subdural brain bleeding, multiple fractures, torn ligaments in the neck, bruising on the face that happened both prior and current. That's not fabricated testimony. That's a fact from witnesses other than the police. It is not fabricated either that Mr. Flores admits that when the ambulance was called, he was the only one with the child when the ambulance was called. Most people call 9-1-1 when an injury or an event is at its crescendo. There's a need. He's the one that was only, only one with the child at the time that the ambulance was called. The grandfather, this is not fabricated either. The grandfather had witnessed Mr. Flores on previous occasions yell so loud at this two-month-old child to startle the child. That's not fabricated. Mr. Flores' friend, Crystal Espinoza, said that he admitted to her that he shook the baby. That's not fabricated. His own admissions that he was frustrated because he had to get to his live stream video games is not, is not fabricated. It's not fabricated that Detective Galan and the Bakersfield Police Department didn't immediately arrest Mr. Flores. The incident occurred on May 21st when the call was made. It was eight days later that he was arrested after the officers spoke with the doctors on multiple occasions, spoke with family members on multiple occasions. And let's not forget about the fact that the district attorney has the discretion to accept or reject the evidence being submitted by the police officer. It is, in a sense, their job to determine whether or not the investigation was from an overzealous police officer and evaluate whether or not there is sufficient evidence to prosecute Mr. Flores. On the issue of the timing, I believe that the record is a little bit different than what counsel stated here. The record is, is that Mr. Flores was alone with the child from 2 p.m. to 3 p.m. on May 21. The record is clear that he was also alone with the child from 3 p.m. to 4 p.m. Now, Justice Rastani is correct that Dr. Hayden indicated that in his view, these types of events were not accidental. And that, of course, explains why Mr. Flores immediately called the ambulance at that point. But one thing that hasn't been stated, Dr. Navin, the ER doctor, the initial doctor that concluded that the injuries in his view strongly showed that they were non-accidental abuse, he indicated based and stated in his testimony, based on the acute subdural hematoma, that the timeline could be as recent as two hours. So this, this effort to say, you know, the officers are fighting to keep it within 10 minutes is not correct. The evidence is contrary to that. Dr. Hayden says it could happen immediately. Mr. Rosen, let me interrupt you for just a second. Let's go back to Dr. Navin's. Navin, yes. All right. As I read the record, Officer Galland testified that Dr. Navin said it was unequivocal, that was the word he used, unequivocal that the baby was shaken by Mr. Flores. But that's not what Dr. Navin said. He didn't use the term unequivocal. Wasn't that a fabrication? Um, I don't, I don't, I don't think that that is a fabrication. I keep in mind now when Dr. Your Honor, if I could just say this, when Dr. Navin testified four years later, he really didn't remember everything that he told Detective Galland, neither did Dr. Hayden. And I, I don't remember in, you know, in any of the testimony of Dr. Galland, where he's telling the preliminary hearing judge or anyone that it was unequivocal. Detective Galland was trying to represent the time elements that the doctors were telling him that injuries like this could occur. And we know that Dr. Navin admits that it is within two hours to say unequivocal that it was Mr. Flores. I don't think there's any testimony from Mr., from Detective Galland to that effect. If there were such testimony, would you agree that that would be a fabrication? No. Well, where can you point out to me in the record? Here's what I mean by that, Justice Bey, if I can just explain. An investigating police officer is entitled to interpret the evidence. And if that's his interpretation based on that day of his discussion with Dr. Navin, that Dr. Navin's demeanor and tone and movements of the head, whatever it may be that an investigating officer draws his conclusions, that may have just been his conclusions of what the doctor was saying. It goes back to what Judge Smith was saying. Does a mistake, does a misinterpretation, does a wrong interpretation or opinion rise to a level of deliberate fabrication when we have a system? Is that for the jury to determine? No, I believe that that's for the court system in the process to determine. If there's evidence that Galland said that Navin's stated, quoted Navin's as being a stating, it's unequivocal. And there's no such statement by Dr. Navin's either in his record or his testimony. Isn't it for the jury to determine whether Galland's statement, quoting Navin's as being unequivocal, is not according or error? Not according to the law as I understand it. If you want to just focus, Your Honor, if you just want to focus on, let's call it a mistake on the part of Detective Galland, that he used the word unequivocal. You can't ignore, even if you ignore that evidence, is there still sufficient probable cause here for the district attorney to proceed with the prosecution of Mr. Flores? And again, do you look at if we want to assume that it was a mistake that he used the word unequivocally, that this was non-accidental abuse? That was unequivocal in what they stated all the way through this. You would be better off arguing, Mr. Motorosian, that even if we think that Galland fabricated the term unequivocal, there is sufficient other evidence to justify the arrest. I don't think the statement was unequivocal that Mr. Flores did it. I don't think that was the statement that you're referring to in his report. The statement by Galland was that Dr. Nevins said it was unequivocal that the baby suffered from shaking, the contracoup damage, and the concussion. The only person there was Mr. Flores. So that's not... No, I think I may be misunderstanding, but let me say this. Both doctors, in my opinion now, said that it was unequivocal that this child suffered from non-accidental abuse, Your Honor, and that's what Detective Galland was referring to. He never reported that they said it was unequivocally Mr. Flores. But even if we ignore that word, is there sufficient probable cause to proceed when you have a two-month-old child that demonstrates injuries like this, including torn ligaments in the neck, and you have a detective that talks to other family members, interviews them, including the grandfather who relates a prior incident with Mr. Flores yelling and startling this child? That evidence cannot be ignored. It can't be ignored that Crystal Espinoza passed along the admission of Mr. Flores to her that he did admit that he shook the child. These things cannot be ignored, and frankly, Your Honor, I do believe it was unequivocal that both Dr. Hayden and Dr. Navin, they never recanted or in any way diluted their opinions from day one, even four years after the incident. These injuries were due to non-accidental abuse, and Detective Galland is not wrong. And if you conclude that he is wrong, Your Honor, I respectfully submit that you can't ignore the other evidence of probable cause here in terms of the evaluation of a Fourth Amendment violation. I'm sorry. Thank you, Your Honor. In conclusion, I do want to say that in our system of justice, adversarial system, people are charged. There are acquittals. Mr. Flores received an acquittal in regard to these charges here. But to say that Detective Galland, based on the record that exists in this court, deliberately fabricated and created false evidence is simply not supported and would completely be unfair in my view. I guess the question I would have is the one raised by my colleagues and by your opposing counsel is, let's say you're right. This is something that would normally be decided by the jury. It's just this is the fundamental disconnect, if you will. I respect your comments about what evidence was there about what was said and what we should interpret from that. But there is a different perspective on it. Would you agree? Different perspective in what way? In the sense that reasonable people could think to the contrary. That's not the law. The law says if you ignore the point that you're making, if we go to Justice Faye's point of the use of the word unequivocal in the report, ignoring that then, is there sufficient evidence to say that this prosecution was based on evidence that was accumulated by the police? And if your answer to that is yes, then that's the law that our system provides to everyone in this case, not only Mr. Flores, but to the Bakersfield Police Department and Detective Galland. That's how I view it, Justice Smith. Okay, so what you see is that there's sufficient evidence for the arrest, even if there were fabrication by Galland, because there's sufficient evidence even in spite of fabrication. Your Honor, my response to that is in my 43 years of practice in every case, and I did criminal work as well, I always believed the police were fabricating, creating, misinterpreting, arguing, giving false opinions. But that's where cross examination and the record and the trial, the system works. I do want to say this as well. If Mr. Flores, he should have shared the evidence of his experts and he didn't do that. So the evidence at the time of the criminal trial was based on expert testimony that was never shared with the prosecution or the police department at any time prior to the criminal trial. And I find that significant, Your Honor, that if this is a case of deliberate fabrication based on Detective Galland, then why go out and find and pay for experts who dispute how child abuse occurs, but never share that evidence at all prior to the criminal trial? So that's how I see it. To say that this rises to a level of deliberate fabrication based on other questions by my colleague, if not, thank you, Mr. Martirosyan. Mr. Ciba, you have a little time left. Yes, thank you, Your Honor. There's one point that I absolutely want to make, and that is that the district court and the appellees are clearly wrong to believe that the fabrication of evidence claim requires a showing that but for the fabrication, there would not have been probable cause. This court in Spencer versus Peters held that the defendant is not an element of a deliberate fabrication claim. So a deliberate fabrication claim stands whether or not there is probable cause. And that makes sense because it's wrong to fabricate evidence against guilty people just as much as it's wrong to fabricate evidence against innocent people. So this is a freestanding claim. I also agree, I also submit that without a mind reading device, it is going to be difficult to determine whether the officer's conduct was deliberate. In other words, it's almost always going to be the officer's state of mind is always going to be an inference drawn from circumstantial evidence. And this court has said that that evidence can be drawn, again, from mischaracterizations of witness statements, which we have, deliberate indifference to the plaintiff's innocence, which we have since the alternative medical explanations for the child's condition, and also from the conduct of the interrogation, which we have in this case. I do want to also not fail to point out that in the case of Crow versus County of San Diego, this court considered the sufficiency of the evidence with respect to a substantive due process claim based on the conduct of the interrogation. And this court concluded that there was a tribal issue with reference to a declaration by Dr. Richard Leo, an expert in coerced confessions. And that was in 2010. Now we have in this case, the same Dr. Richard Leo, his report begins on excerpts of record 302, and he opined in this case that the interrogation was coercive and abusive and explained his reasons. So I think that is a strong, strongly militates in favor of the sufficiency of the evidence. Can I ask, where are you going with this deliberate fabrication in the absence of any effect on the probable cause? So that's just a nominal damages claim? Is that what that is? Well, that would be a factor. If one found that, hey, it's clear that it was probable cause to go forward with this prosecution, but yet there was at least one deliberate fabrication, which then didn't relate to any harm. So then where are you? Well, then there would be a question of causation. And that would be a disputed fact for the jury to determine. Causation of what? Of harm. What harm would have approximately flowed from this? From this deliberate fabrication, which was untethered to the lack of, to a probable cause. But I submit that there was, nevertheless, I did want to point that out. I understand. I understand your argument. I'm just, that was a hypothetical. Other questions by my colleagues. We're over your time now. Mr. Sebaugh, either of my colleagues have additional questions? I have one question to Mr. Sebaugh. Let me understand you clearly. Your claim here for damages is that Flores was arrested and had to stand criminal trial. If there's sufficient evidence of probable cause independent of fabricated evidence, doesn't your claim fail? No. And well, my position, again, with respect to, with reference to Spencer versus Peters, is that that is not an element of, that I'm required to prove in order to establish this claim. You have to prove causation of damage, do you not? Right. Well, I mean, again, my argument is that there would be no problem. There was no probable cause to arrest him because of the absence of evidence. Yeah, but it tells me my hypothetical. Right. Hypothetically. Other evidence than Galland that there was probable cause to arrest Flores. Right. And we find that Galland fabricated his testimony. Right? Right. The standing claim of fabrication has no compensable and cognizable damages because the damage is his arrest and there was probable cause for his arrest. Well, I suppose it would depend on the specifics of what was, what was fabricated. If he incurred, I suppose, additional costs or expense in defending his claim as a result of the fabricated claim being in there, or if they're... Are you claiming damages directly caused by the fabrication, some sort of emotional distress separate from the deprivation of liberty caused by the arrest? Well, to the extent that any such remedies are available, yes, he would claim them. Is that briefed in your opening brief? I don't believe I addressed that hypothetical situation. I just thought of that myself. Okay, go ahead. Very well. Any other questions by my colleague? We thank both counsel for your arguments. Very helpful in this case. The case of Flores v. City of Bakersfield is submitted. Judge Smith, I just need to go get a glass of water. 30 seconds. Very well. So I'll just wait for 30 seconds while the new, you're welcome, while the new case, U.S. v. Water Resources Control Board lines up.
judges: Bea, M. Smith, Restani